# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RENEE C. KENT,

                **Plaintiff,**

      **v.**                              **Case No. 22-CV-1523**

MARTIN O'MALLEY
Commissioner of Social Security,

                **Defendant.**

---

# DECISION AND ORDER

### 1. Introduction

Alleging she has been disabled since June 17, 2020 (Tr. 14), plaintiff Renee C. Kent seeks supplemental security income benefits. After her application was denied initially (Tr. 69-124) and upon reconsideration (Tr. 137-39), a hearing was held before Administrative Law Judge (ALJ) Brent C. Bedwell on May 2, 2022 (Tr. 32-57). On May 19, 2022, the ALJ issued a written decision concluding that Kent was not disabled. (Tr. 11-31.) After the Appeals Council denied Kent's request for review on October 18, 2022 (Tr. 1-6), Kent filed this action. All parties have consented to the jurisdiction of a magistrate judge (ECF Nos. 4, 6) and the matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). The ALJ found that Kent "has not engaged in substantial gainful activity since June 17, 2020, the application date[.][1]" (Tr. 17.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.922(a). The ALJ concluded that Kent has the following severe impairments: obesity, rheumatoid arthritis, osteoarthritis, status post right knee replacement, history of degenerative disc disease with status post lumbar fusion and right shoulder degenerative joint disease. (Tr. 17.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20

---

[1] Kent initially applied for Title II disability and disability insurance benefits, as well as Title XVI supplemental security income benefits, alleging an onset date of June 30, 2004. (Tr. 14.) Kent amended her alleged onset date to June 17, 2020, the date of her applications, making her ineligible for benefits under Title II. (Tr. 14.) As a result, her amended alleged onset date with respect to her claim for benefits under Title XVI is the same as her application date.

C.F.R. §§ 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §416.909, the claimant is disabled. 20 C.F.R. § 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 416.920(e). The ALJ found that Kent "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" (Tr. 18.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. § 416.945(a). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Kent has the RFC "to perform sedentary work as defined in 20 CFR 416.967(a) except she cannot kneel, crawl, reach overhead or climb ladders, ropes and scaffolds; and can do occasional stooping, crouching and climbing of ramps and stairs." (Tr. 20.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant

work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.960. The ALJ concluded that Kent has no past relevant work. (Tr. 24.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c). At this step, the ALJ concluded that Kent was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," such as final assembler (DOT 713.687-018), with 88,000 jobs in the national economy; weight tester (DOT 539.485-010), with 12,000 jobs; and charge account clerk (DOT 205.367-014), with 22,000 jobs. (Tr. 25.)

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial

evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

### 4. Analysis

### 4.1. Subjective Symptom Evaluation

The ALJ must assess a claimant's symptoms, that is, the "individual's own description or statement of his or her physical or mental impairments," using a two-step process. SSR 16-3p. First, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p. If step one is satisfied, at step two the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3-p. In addition to considering all other relevant evidence, the ALJ must also consider the following factors to the extent they are relevant:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. The ALJ's conclusion is entitled to "special deference," and the court may disrupt it only if that assessment was "patently wrong." *Burmester,* 920 F.3d at 510; *Summers*, 864 F.3d at 528.

The ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record.

(Tr. 21.) Relevant here, the ALJ found that (1) Kent's "relatively good physical functioning" based on overall good physical examination findings and improvement of symptoms with treatment despite her impairments, and (2) evidence of Kent's daily activities both indicated that she retained better physical functioning than she alleged. (Tr. 22-23.)

### 4.1.1. Intensity, Persistence, and Limiting Effects of Kent's Knee-Related Symptoms

Kent argues that the ALJ committed error when concluding that the intensity, persistence, and limiting effects of her knee-related pain and limitations in standing and walking were not consistent with the evidence in the record. Specifically, Kent challenges the ALJ's reliance on her normal physical examination findings and treatment records when concluding that she retained better functioning than alleged. (ECF No. 16 at 8-9.)

Kent reported pain in her right knee and lower leg that impaired her ability to stand and walk. (*See* Tr. 269-77.) As stated above, the ALJ acknowledged that Kent's impairments could cause some of her symptoms but found that Kent's statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the evidence in the record. (Tr. 21.) With respect to Kent's knee, the ALJ found that she had relatively good physical functioning, pointing to imaging showing that her right knee was stable after her revision surgery, that she was observed with normal range of motion, stability, and strength in the knee, intact sensation, and to be without an assistive device. (Tr. 22.) The ALJ also pointed to the fact that imaging did not show abnormalities in her knee, doctors did not recommend additional surgeries, and instead recommended that Kent pursue conservative treatment options. (Tr. 22.)

Kent argues that the ALJ overlooked the tibial stem component of her knee replacement as a cause of her symptoms when concluding that this medical evidence

undermined her allegations of lower leg pain and difficulty standing and walking. (ECF No. 16 at 9.) Kent states that providers identified the tibial stem component of her knee implant as a source of pain. (*Id.* at 10.) Treatment notes from one orthopedist, Dr. David Conrad, found that Kent's lower leg symptoms were consistent with stem pain (*Id.* (citing Tr. 388)) and another provider, Advanced Practice Nurse Prescriber (APNP) Jon Berge, identified the tibial stem as a possible cause (*Id.* (citing Tr. 634)).

According to Kent, the pain caused by the tibial stem component is not inconsistent with the examination findings or the conservative treatments recommended to her that the ALJ relied on to discount her symptom allegations. (ECF No. 16 at 11.) Kent points to the treatment notes of Dr. Conrad, who examined Kent's knee with unremarkable findings (except for a limitation in Kent's range of motion) and was aware of normal imaging regarding Kent's knee, but nonetheless concluded that Kent's reports of pain were consistent with tibial stem pain. (Tr. 388.) She also points to APNP Berge's treatment notes, which cited generally normal findings and recommended conservative treatment but nonetheless discussed the tibial stem as a possible source of Kent's pain. (Tr. 634.) Kent contends that the ALJ failed to build an accurate and logical bridge between the evidence and his conclusion that Kent's symptoms were not fully substantiated because the evidence he relied on did not contradict her allegations of pain. (ECF No. 16 at 9 (citing *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).)

The Commissioner responds that the ALJ's failure to acknowledge Kent's pain as "stem pain" is not reversible error because the ALJ was not required to summarize every piece of evidence in the record. (ECF No. 24 at 8 (citing *Anders v. Saul*, 860 F. App'x 428, 432 (7th Cir 2021); *Roberts v. Saul*, No. 18-CV-773, 2019 WL 3501458, at *3 (E.D. Wis. July 31, 2019)).) The Commissioner states that the ALJ accurately discussed Kent's history of knee surgeries and subsequent medical records pertaining to her knee, emphasizing that Kent "does not point to any inaccuracies in the ALJ's discussion of the evidence" relied upon to discount Kent's allegations. (*Id.*)

Kent does not challenge the accuracy of the information which the ALJ did cite; rather, she challenges the ALJ's failure to acknowledge the tibial stem as a source of pain, as well as the ALJ's reliance on the normal examination findings and treatment records in discounting the severity of her symptoms. (*See* ECF No. 28 at 1-2.) According to Kent, the ALJ's conclusion was not supported by the record because the ALJ ignored evidence that was consistent with her symptom allegations—the tibial stem as a source of pain. Because the tibial stem was identified as a cause of the pain in her knee despite her knee appearing normal and not requiring extensive treatment, the examination findings and treatment records the ALJ cited to discount Kent's allegations do not undermine or contradict her statements regarding the severity of her symptoms.

Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the

conclusions drawn. *Jelinek v. Astrue*, 662 F.3d at 811 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). Here, the ALJ did not provide adequate support for the conclusion that Kent's allegations were not substantiated by the record. The evidence relied upon by the ALJ—the examination findings regarding Kent's knee and treatment records suggesting conservative care—may serve to discount allegations of knee pain and related limitations in other contexts, but an entirely separate cause of pain was identified by providers notwithstanding the examination findings and treatment records. As a result, the ALJ's conclusion that the intensity, persistence, and limiting effects of Kent's symptoms were inconsistent with the evidence in the record is not adequately supported. The evidence the ALJ cited in drawing that conclusion did not undermine or contradict Kent's allegations of knee pain and limitations in her ability to stand and walk. *See Johnson v. Kijakazi*, No. 22-CV-579-SCD, 2023 WL 5372514 at *4 (E.D. Wis. Aug. 22, 2023) (remanding where the ALJ, in assessing the plaintiff's symptom allegations, discounted the claimant's allegations by relying on evidence that did not contradict the plaintiff's statements about her symptoms).

Kent also argues that, by failing to acknowledge the severity of her knee pain, the ALJ did not adequately assess her allegations of limitations in her ability to stand and walk. (ECF No. 16 at 12-13.) Kent points out that, while she reported that her pain required her to lay down or sit with her legs up frequently, that she could walk for no more than three minutes or a half-block on flat ground at a slow pace, could not climb

stairs, and testified to using crutches, the ALJ did not fully credit these limitations. (*Id.*) For example, the ALJ found that Kent could do occasional climbing of stairs and that she did not require an assistive device, relying in part on the examination findings and treatment records regarding her knee. (Tr. 20, 22.)

The Commissioner contends that the ALJ reasonably accommodated any such limitations by limiting Kent to sedentary work, and that the ALJ's determination regarding the need for an assistive device is supported by substantial evidence because the ALJ pointed to some instances where Kent was observed walking without an assistive device (in addition to the examination findings and treatment recommendations). (ECF No. 24 at 9 (citing Tr. 22).)

However, the ALJ's conclusions regarding the intensity and persistence of Kent's limitations in standing and walking appear to be based in large part on her examination findings and treatment records. But that evidence does not undermine Kent's statements regarding the severity of her pain and related limitations. As such, the ALJ's conclusion that Kent's claimed limitations are not as severe, persistent, or limiting as alleged also lacks adequate support.

In sum, the ALJ's conclusion regarding the severity, persistence, and limiting effects of Kent's knee-related symptoms and limitations is not supported by substantial evidence. For that reason, remand is necessary.

### 4.1.2. Daily Activities

With respect to Kent's daily activities, the ALJ found that the record evidence indicated better functioning than her alleged symptoms suggested. (Tr. 22.) Kent challenges the ALJ's assessment of her daily activities, arguing that the ALJ failed to consider limitations in her ability to engage in daily activities when citing those activities as evidence that her symptoms were not as severe as alleged, and failed to explain how those activities undermined her symptom allegations. (ECF No. 16 at 14, 16.)

Kent contends that the ALJ failed to acknowledge various limitations and the need for a caregiver to complete daily activities. (ECF No. 16 at 14.) Kent lists a myriad of limitations in her activities documented in the record. For example, when referring to Kent's ability to do housework, Kent claims the ALJ ignored the fact that she needs assistance with vacuuming, cleaning the refrigerator, taking out trash, doing outside chores, and transferring clothes when doing laundry. (*Id.* at 14-15 (citing Tr. 330).) With respect to her ability to prepare meals, Kent states the ALJ overlooked evidence that she needs assistance transferring things in and out of the oven, that she cannot mix things in a bowl, and that she struggles to stand while cooking, resulting in her only making meals in steps. (*Id.* at 14 (citing Tr. 329).) With respect to personal care, Kent states the ALJ ignored evidence that she needs assistance getting dressed, toileting, transferring in and out of the shower, and washing and drying her hair. (*Id.* at 16 (citing Tr. 329).)

Case 1:22-cv-01523-WED   Filed 01/26/24   Page 12 of 23   Document 29

Kent states that, by failing to consider the limitations in her activities, the ALJ ignored an entire line of evidence inconsistent with his conclusion. (ECF No. 16 at 14 (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Zblewski v. Schweiker*, 732 F.2d 75, 78-79 (7th Cir. 1984)).) Additionally, Kent argues that the ALJ's reliance on certain portions of the record to discredit her allegations of disabling symptoms while ignoring portions that support her allegations is a selective use of the evidence that constitutes reversible error. (*Id.* at 15 (citing *Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014)).)

The Commissioner defends the ALJ's discussion of Kent's daily activities, arguing that the ALJ accurately summarized her daily activities and acknowledged Kent's reported limitations. (ECF No. 24 at 10 (citing Tr. 20-21).) The Commissioner also argues that, while Kent takes issue with the ALJ's brief mention of her need for a caregiver, the fact that the ALJ did not go into as much depth as Kent believes he should have is not reversible error. (*Id.* at 11.) The Commissioner again points out that the ALJ did not need to address every piece of evidence in the record when assessing Kent's allegations. (*Id.*)

When relying on evidence of daily activities to assess a claimant's subjective symptom allegations, "an ALJ cannot disregard a claimant's limitations in performing household activities." *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (citing *Craft v. Astrue*, 539 F.3d 668 at 680 (7th Cir. 2008); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006)). The ALJ did acknowledge some limitations in Kent's ability to perform daily

activities, stating that, with respect to her knee, arthritis, and right shoulder impairments:

> The claimant asserted these impairments affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs (4E). Additionally, the claimant asserted a compromised ability to tend to her activities of daily living, such as taking care of her personal care needs, driving, doing some chores and yardwork, and engaging in social activities, hobbies or other interests (4E, 7E). She further indicated that her impairments affect her sleep. She also related that her conditions had worsened over time (6E, 10E). At the hearing, she testified that she experiences daily pain due to her conditions.

(Tr. 20.) The ALJ also acknowledged that Kent receives help from a caregiver. (Tr. 22) ("There is reference to the claimant having a caregiver who helps the claimant with some tasks few days per week.").) In concluding that Kent's daily activities indicated better functioning than she alleged, the ALJ explained that Kent

> was able to overall tend to her own personal care needs and tend to her activities of daily living, such as going to church, taking care of her children, preparing meals, doing housework, attending her children's sporting events, shopping, managing her money, going camping handling her own medical care, and attending medical appointments.

(Tr. 22.)

While the ALJ recognized some limitations in Kent's ability to perform daily activities, he did not recognize limitations in all the activities he cited to discredit Kent's symptom allegations. For example, the ALJ cited Kent's ability to shop as evidence that she was capable of more than she alleged but did not acknowledge evidence indicating that she could only shop for 15-20 minutes at a time, needed to hold on to a cart or use a

motorized cart, and needed someone to accompany her. (*See* Tr. 22, 44-45.) The ALJ also cited Kent's ability to care for her children, attend their sporting events, and go to church without addressing limitations in her ability to do those things. (Tr. 22, 41, 290.) The ALJ was not free to ignore limitations in Kent's ability to engage in these activities. *Moss*, 555 F.3d at 562.

Furthermore, as to the limitations in Kent's daily activities which the ALJ did acknowledge, he did not explain how Kent could perform her daily activities despite those limitations. For example, the ALJ concluded that Kent was capable of tending to her own personal care despite evidence indicating she needed assistance with activities like getting dressed, using the bathroom, and bathing. (Tr. 22, 329.) *See Craft*, 539 F.3d at 680 (remanding where the ALJ relied on the claimant taking a "daily walk," vacuuming, and shopping to conclude that symptoms were not as severe as alleged but overlooked that the "walk" was to the mailbox, vacuuming lasted four minutes, and shopping was done with a motorized cart and plaintiff could carry only one bag at a time); *Mendez*, 439 F.3d at 362 ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home."). Moreover, the ALJ's consideration of Kent's daily activities without addressing evidence of the limitations on those activities indicates that the ALJ was inappropriately selective in choosing the evidence on which he based his conclusion. *See Scrogham*, 765 F.3d at 698-99.

By failing to acknowledge Kent's limitations in her ability to engage in daily activities, the ALJ has failed to build the requisite accurate and logical bridge between the evidence related to Kent's daily activities and his conclusion that they suggested better functioning than Kent alleged. *See Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018). For this reason, remand is necessary.

### 4.2. State Agency Physicians' Opinions

State agency consultants Usama Khayyal, M.D., and Mina Khorshidi, M.D., who reviewed the record at the hearing and reconsideration levels, respectively, both opined that Kent could perform sedentary work except that she would be limited to occasional climbing of ramps or stairs, occasional climbing of ladders, ropes or scaffolds, frequent stooping, occasional kneeling, occasional crouching, occasional crawling, and occasional overhead reaching with her right upper extremity. (Tr. 81-85, 113-116.)

An ALJ must assess a medical opinion in terms of its persuasiveness, paying particular attention to how well the expert supports his opinion, how consistent the opinion is with the record, the expert's relationship with the claimant, the expert's specialization and expertise, and any other particularly relevant factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Although an ALJ must consider all of these factors, he need only explain how he considered supportability and consistency. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

The ALJ found the opinions of Drs. Khayyal and Khorshidi to be "significantly persuasive" based on their training, familiarity with the agency's rules and regulations, and the consistency of their opinions with Kent's treating records and normal examination findings as well as Kent's ability to perform activities of daily living. (Tr. 23.) The ALJ included more restrictive postural limitations, however, based on Kent's testimony and additional evidence available at the hearing level. (Tr. 23.)

Kent argues that the ALJ's discussion of the consistency of the state agency doctors' opinions with the evidence in the record is insufficient as it relates to her knee impairment for the same reasons as his assessment of Kent's subjective symptoms. Kent contends that, because the ALJ overlooked critical details about limitations in her ability to perform daily activities, he did not properly assess the consistency between her daily activities and the opinions of the state agency doctors. (ECF No. 16 at 20.) Similarly, because the ALJ ignored evidence suggesting that the tibial stem component of her knee implant was a source of her knee and lower leg pain, the ALJ did not properly assess the consistency between the medical evidence and the doctors' opinions. (*Id.* at 19.) According to Kent, the ALJ ignored entire lines of evidence that run contrary to his conclusions by failing to consider the limitations in her daily activities and tibial stem as a source of her pain. (ECF No. 16 at 19 (citing *Villano*, 556 F.3d at 563).)

The Commissioner claims that Kent is asking the court to reweigh the evidence in a light more favorable to her claim. (ECF No. 24 at 6.) The Commissioner states that

the ALJ found that the state agency doctors' opinions were consistent with Kent's treatment records, examination findings, and daily activities, and as a result the ALJ's assessment regarding their persuasiveness is supported by substantial evidence. (*Id.*)

The court has already determined that the ALJ erred when failing to address the tibial stem and limitations on Kent's daily activities. Because the ALJ relied on evidence of Kent's daily activities as consistent with the state agency doctors' opinions without considering the limitations in her ability to perform those activities, the ALJ's evaluation of those opinions is based on a mischaracterization of Kent's daily activities. And because the ALJ relied on evidence of Kent's normal examination findings and treatment records as consistent with the state agency doctors' opined RFCs (which allowed for some walking, standing, as well as other movement involving her knee) when that evidence does not contradict her allegations of knee pain and limited ability to stand and walk, it's not clear how that evidence is consistent with the doctors' opinions. Nor did the ALJ offer any other explanation that would assure the court that he properly considered the consistency of the opinions with other evidence in the record.

Kent also argues that the ALJ failed to address the supportability factor when considering the persuasiveness of the state agency doctors' opinions as required by 20 C.F.R. § 416.920c. (ECF No. 16 at 21.) The Commissioner does not respond to Kent's supportability argument.

In explaining how ALJ's are to assess an opinion's "supportability," the regulations provide, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) …, the more persuasive the medical opinions … will be." 20 C.F.R. § 404.1520c(1).

The ALJ did not address the objective evidence or supporting explanations presented by the state agency doctors when concluding that their opinions were significantly persuasive. (*See generally* Tr. 23.) "The failure to address the supportability of a prior administrative medical finding constitutes legal error." *See Stevens v. Kijakazi*, No. 21-CV-270-SCD, 2022 WL 1000598 at *7 (E.D. Wis. Apr. 4, 2022) (citing *Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021)). Because the ALJ did not sufficiently explain the consistency of the state agency doctors' opinions with other evidence in the record, or the supportability of their opinions, he fell short of his obligation under 20 C.F.R. 416.920c(b)(2). Remand is required so that the ALJ can reassess the persuasiveness of the opinions of Drs. Khayyal and Khorshidi.

### 4.3.    Family Physician's Opinion

Kent's primary care physician, Dr. Daniel Lemkuil, provided his opinions regarding Kent's functional limitations in three questionnaires. Relevant here, two of the questionnaires, an Arthritis Medical Opinion Form and a Physical Medical Opinion Form, addressed Kent's physical limitations. (Tr. 733, 739.) Dr. Lemkuil opined that Kent

could sit for four hours per workday and could stand/walk less than two hours, would need to change positions at will, would need to take unscheduled breaks, and would need to use an assistive device for occasional walking and standing. (Tr. 734-35, 740-41.) Dr. Lemkuil also opined that Kent could lift less than ten pounds frequently but could lift more than ten pounds only occasionally or rarely, and that she could perform occasional postural activities, would be off-task 15 percent of the workday, and would be absent more than four days per month. (Tr. 735-36, 741-42.)

The ALJ found Dr. Lemkuil's opinion "partially persuasive" because "there is some support in the records for the range of sedentary work opined, but not much support for the need for unscheduled breaks, change of position frequency, off task amount, and absenteeism." (Tr. 23-24.) Additionally, the ALJ found Kent's daily activities to be "in excess of what is opined by Dr. Lemkuil…." (Tr. 24.)

Kent argues that the ALJ's assessment of Dr. Lemkuil's opinion as providing only "some support" for the range of sedentary work opined is based on a misreading of Dr. Lemkuil's opinion. (ECF No. 16 at 23.) Kent states that Dr. Lemkuil's opinion reflects exertional abilities that are less than what is required for a sedentary RFC. (*Id*.) Dr. Lemkuil's opinion allowed for two hours of standing or walking and four hours of sitting in an eight-hour workday, while the regulations provide that the sedentary RFC provides for no more than "about two hours" of standing or walking and "approximately six-hours" of sitting in an eight-hour workday. (*Id*. (citing SSR 83-10).)

As a result, the reason the ALJ gave for finding Dr. Lemkuil's opinion only "partially persuasive" is incorrect. (*Id.*)

The Commissioner responds that the ALJ accurately found Dr. Lemkuil's opinion relating to Kent's ability to sit, stand, walk, and lift consistent with sedentary work as defined in 20 C.F.R. § 416.967(a). Therefore, there was "some" support for a range of sedentary work. (ECF No. 24 at 5.)

For full-time sedentary work, sitting "should generally total approximately 6 hours" of the day. SSR 83-10. Dr. Lemkuil opined that Kent could sit for about four hours in an eight-hour workday. (Tr. 734, 740.) He further opined that she could stand and walk for no more than two hours in an eight-hour workday. (Tr. 734, 740.) Thus, the ALJ mischaracterized Dr. Lemkuil's opinion as suggesting that Kent could perform sedentary work when instead it suggests that she is not capable of sedentary work. *See Doyle v. Colvin*, No. 4:15-CV-76-JEM, 2016 WL 5349500 at \*3 (N.D. Ind. Sept. 26, 2016) (remanding where the ALJ mischaracterized a medical opinion that claimant could sit for at least two hours as suggesting that the claimant was capable of sedentary work activities when the opinion suggested capabilities below a sedentary RFC).

Kent also argues that the ALJ did not sufficiently address the nonexertional aspects of Dr. Lemkuil's opinion. (ECF No. 16 at 25.) According to Kent, the ALJ's conclusion that there was "not much support" for Dr. Lemkuil's opinion regarding the need for unscheduled breaks, need to change positions, time off task, and absenteeism

was cursory. (*Id.*) But Kent does not point to any evidence that supports these aspects of Dr. Lemkuil's opinion. The ALJ also concluded that Kent's reported daily activities were inconsistent with Dr. Lemkuil's opinion: "[t]he claimant's own reported range of her ability to perform activities of daily living in her adult function report (from July 2020) are in excess of what is opined by Dr. Lemkuil." (Tr. 24.) Kent states that the ALJ did not explain why those activities were inconsistent with Dr. Lemkuil's opinion as to her abilities, and argues that her daily activities are not inconsistent with Dr. Lemkuil's opinion.

The ALJ did not discuss which of Kent's daily activities were inconsistent with Dr. Lemkuil's opined limitations. Additionally, as with the ALJ's assessment of the opinions of Drs. Khayyal and Khorshidi, because the ALJ failed to acknowledge various limitations on Kent's daily activities, it is not clear that his discussion regarding the consistency between Dr. Lemkuil's opinion and Kent's daily activities accurately portrayed her daily activities.

Because the ALJ's assessment of Dr. Lemkuil's opinion rested on the misunderstanding that Dr. Lemkuil suggested Kent was capable of sedentary work, and because the ALJ did not explain how Kent's daily activities were inconsistent with the opinion, the ALJ has not supplied an accurate and logical bridge between the evidence and his conclusion. *Spicher*, 898 F.3d at 757.

### 5. Conclusion

Because the ALJ erred in assessing the severity, persistence, and limiting effects of Kent's symptoms with respect to Kent's knee impairment, he must reevaluate Kent's allegations of pain and associated limitations on her ability to stand and walk.

Additionally, because the ALJ relied on Kent's daily activities to discount her subjective symptom allegations without considering limitations on Kent's ability to perform those activities, how they impacted her daily activities, and did not explain how those activities undermined her symptoms, he must provide more explanation as to how he considered Kent's daily activities when assessing her symptom allegations.

And due to the ALJ's failure to properly discuss the persuasiveness of the opinions of Doctors Khayyal, Khorshidi, and Lemkuil, on remand he must reevaluate those opinions.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is vacated, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is remanded for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 25th day of January, 2024.

WILLIAM E. DUFFIN
U.S. Magistrate Judge